1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  CHERIE ALEXANDER,                         CASE NO. 08-CV-01814 JLS (POR)

12                              Plaintiff,     **ORDER: GRANTING**
                                              **DEFENDANT'S MOTION TO**
13        vs.                                 **DISMISS**

14  SAN DIEGO UNIFIED SCHOOL                  (Doc. No. 63)
    DISTRICT; JIM SOLO; COLLEEN
15  CONAWAY; and CHRIS MARA,

16                              Defendant.

17        Presently before the Court is Defendants' motion to dismiss the complaint.  (Doc. No. 49.)

18  For the reasons set forth below, Defendant's motion is **GRANTED** and this action is **DISMISSED**

19  **WITHOUT PREJUDICE**.

20                              **BACKGROUND**

21        Plaintiff Cherie Alexander ("Plaintiff") was a kindergarten teacher at Torrey Pines Elementary

22  School.[1]  Plaintiff states that in August of 2002, her classroom was broken into, and that valuable

23  personal items were put in the trash by the school principal, Defendant Colleen Conaway, and a

24  janitor.  (FAC at 55, 63–64.)[2] Conaway was replaced as principal later that fall and the new principal,

25

26        [1] For purposes of this motion, all of the facts alleged in the complaint are taken as true.
27  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

28        [2] For reference purposes, all page cites to the complaint are to the CM/ECF file stamp.

1    Defendant Jim Solo ("Solo"), engaged in multiple acts of harassment against Plaintiff.  (*Id.* at 56.)

2    Plaintiff states that at this time she wrote several letters to Defendant San Diego Unified School

3    District ("SDUSD") complaining of the disposal of her belongings and the harassment she was

4    suffering, all of which were ignored.  (*Id.*)  On January 7, 2003, shortly after Solo had yelled at her,

5    Plaintiff suffered a stroke.  The stroke forced her onto medical leave until June 13, 2003.  (*Id.*)  After

6    her return, Solo continued to harass Plaintiff, including an incident in which he yelled at Plaintiff

7    while she was in her classroom reading to her students.  (FAC Exs. at 141.)  On June 19, 2003 Plaintiff

8    was placed on administrative leave by Defendant, which "effectively terminat[ed] her employment."

9    (FAC at 61.)

10    Between being placed on administrative leave and a hearing with the Office of Administrative

11    Hearings ("OAH") in September, 2007, Plaintiff made complaints to the California Department of Fair

12    Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC"),

13    and engaged in state and Federal litigation against Defendants and others.  (*Id.* at 61.)  On August 11,

14    2008 Plaintiff filed an EEOC Charge of Discrimination and received a Notice of Right to Sue dated

15    August 18, 2008.  On October 3, 2008 Plaintiff filed the initial complaint in the current action, (Doc.

16    No. 1) and on June 19, 2009 she filed the first amended complaint ("FAC") at issue in the instant

17    order. (Doc. No. 45.)  On July 6, 2009 Defendants filed a motion to dismiss.  (Doc. No. 49.)  On July

18    20, 2009 Plaintiff filed her opposition, (Doc. No. 51) and on July 30, 2009 Defendants filed their

19    reply.  (Doc. No. 58.)  Plaintiff proceeds in this action *pro se*.

20                                              **LEGAL STANDARD**

21    Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that

22    the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a

23    motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and

24    sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain

25    statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not

26    require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-

27    unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949 (2009)

28

1   (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a plaintiff's

2   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

3   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

4   550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   "Nor does a complaint suffice

5   if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949

6   (citing *Twombly*, 550 U.S. at 557).

7        "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

8   as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S.

9   at 570); *see also* Fed. R. Civ. P. 12(b)(6).   A claim is facially plausible when the facts pled "allow[]

10  the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

11  (citing *Twombly*, 550 U.S. at 556).   That is not to say that the claim must be probable, but there must

12  be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*   Facts "'merely

13  consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.*   (quoting

14  *Twombly*, 550 U.S. at 557).   Further, the Court need not accept as true "legal conclusions" contained

15  in the complaint. *Id.*   This review requires context-specific analysis involving the Court's "judicial

16  experience and common sense." *Id.* at 1950 (citation omitted).   "[W]here the well-pleaded facts do

17  not permit the court to infer more than the mere possibility of misconduct, the complaint has

18  alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

19       Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court

20  determines that the allegation of other facts consistent with the challenged pleading could not possibly

21  cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting

22  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).   In other

23  words, the Court may deny leave to amend where amendment would be futile. *See id.*; *Schreiber*

24  *Distrib.*, 806 F.2d at 1401.

25  //

26  //

27  //

28

**ANALYSIS**

**I.      Subject Matter Jurisdiction**

Defendants argue that the Court has no subject-matter jurisdiction to hear this case, because the federal claims made by Plaintiff are "sham" claims made solely to get into federal court.  (Memo. ISO Motion at 5–7.)  "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).  Even if a plaintiff's federal claims are unlikely to state a proper cause of action, such a determination requires a judgment on the merits by the court and not a dismissal for lack of jurisdiction.  *Bell v. Hood*, 327 U.S. 678, 682 (1946).

In the instant case, Plaintiff's federal claims are not so obviously without merit as to deprive the Court of subject matter jurisdiction.  Though Plaintiff's federal claims may not be clearly articulated at all points, they have a plausible connection to Plaintiff's factual allegations, for example that she was terminated from her position for discriminatory reasons, such that the Court does not find them frivolous.  The Court is not fully convinced that the federal claims serve no other purpose than to try and get Plaintiff into federal court, and therefore finds that it has subject matter jurisdiction.

**II.     Preclusion**

Defendants next argue that Plaintiff's claims are precluded.  The doctrine of preclusion prevents parties from re-contesting issues that have already been decided on their merits in previous litigation.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971).  "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).  Thus, "all federal courts [are] to give preclusive effect to state-court judgments whenever the court of the State from which the judgments emerged would do so."  *Id.* (citation omitted).  Under California law, preclusion bars "parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction."

1    *Teitelbaum Furs, Inc. v. Dominion Ins. Co.*, 58 Cal. 2d 601, 604 (1962).  "[T]he doctrine may also

2    preclude a party to prior litigation from redisputing issues therein decided against him, even when

3    those issues bear on different claims raised in a later case."  *Vandenberg v. Superior Court*, 21 Cal.

4    4th 815, 828 (1999).  "[T]he pleadings and proof in each case must be carefully scrutinized to

5    determine whether a particular issue was raised even though some legal theory, argument or 'matter'

6    relating to the issue was not expressly mentioned or asserted."  *Clark v. Lesher*, 46 Cal. 2d 874,

7    880–81 (1956).

8           In the instant case, Defendants assert that all of Plaintiff's causes of actions are precluded due

9    to several suits she has filed in California state court.  (Memo. ISO Motion at 7–9.)  Because the

10   previous lawsuits involved the removal of items from Plaintiff's room, events surrounding her

11   treatment after that incident, and her termination, Defendants argue that Plaintiff's case here is an

12   attempt to relitigate issues already decided on the merits in earlier state court decisions.  (*Id.*)

13          Although Defendants are correct that Plaintiff's suit involves the same issues contended in

14   several, if not all, of the previous state court cases, they have not shown "finally determined"

15   judgments in those cases.  To prove their argument, Defendants present this Court with exhibits

16   reflecting events in the San Diego County Superior Court.  None of the evidence, however, is of the

17   sort that would prove preclusion.  For example, some of the documents state on their face that they

18   reflect the court's tentative opinion.  (*See id.*, Exs. C, F, J, L, N, & R.)  A tentative ruling is not

19   entitled to preclusive effect.  *See Thomas v. Hous. Auth. of L.A.*, 2005 WL 6133692, at *1 (C.D. Cal.

20   2005) (A "tentative order binds neither the court nor the parties.") (citing *Rhode Island v. United*

21   *States Envtl. Prot. Agency*, 378 F.3d 19, 25 (1st Cir. 2004)); *In re Waltrip*, 139 B.R. 492, 496 (N.D.

22   Cal. 1991) ("whether or not a judgment ought to be considered 'final' in the sense of precluding

23   further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it

24   was not avowedly tentative)") (quotation and citation omitted).  Other submitted documents do not

25   address the merits of Plaintiff's claims.  (*See id.*, Exs. F, G, H & Q.)  Where an issue is not decided

26   on its merits, a previous court ruling does not preclude its reexamination.  While still others do not

27   indicate in which case they were issued.  (*See id.*, Ex. D.)  In light of these flaws, the Court declines,

28

1   without prejudice, to find that the prior suits preclude the maintenance of the instant action.

2   **III.     Statute of Limitations**

3         **A.     Title VII, ADA, and Rehabilitation Act**

4         Plaintiff alleges violations of several federal anti-discrimination statutes, including the

5   Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and § 504 of the

6   Rehabilitation Act.  (FAC at 2–4.)  "To establish a violation of Title II of the ADA, a plaintiff must

7   show that (1) she is a qualified individual with a disability; (2) she was excluded from participation

8   in or otherwise discriminated against with regard to a public entity's services, programs, or activities,

9   and (3) such exclusion or discrimination was by reason of her disability."  *Lovell v. Chandler*, 303

10  F.3d 1039, 1052 (9th Cir. 2002).

11        Under Title VII, it is unlawful "for an employer– (1) to fail or refuse to hire or to discharge

12  any individual, or otherwise to discriminate against any individual with respect to his compensation,

13  terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex,

14  or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment

15  in any way which would deprive or tend to deprive any individual of employment opportunities or

16  otherwise adversely affect his status as an employee, because of such individual's race, color, religion,

17  sex, or national origin."  42 U.S.C. § 2000e-2.  "A person suffers disparate treatment in his

18  employment when he or she is singled out and treated less favorably than others similarly situated on

19  account of" her race, color, religion, sex, or national origin.  *Cornwell v. Electra Cent. Credit Union*,

20  439 F.3d 1018, 1028 (9th Cir. 2006).

21        "To establish a violation of § 504 of the [Rehabilitation Act], a plaintiff must show that (1) she

22  is handicapped within the meaning of the [Act]; (2) she is otherwise qualified for the benefit or

23  services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4)

24  the program providing the benefit or services receives federal financial assistance."  *Id.*

25        In order to bring claims under the ADA or Title VII, a plaintiff must file a claim with the

26  EEOC within 180 days of the alleged act(s) of discrimination, or within 300 days if she has first filed

27  state charges with the DFEH.  42 U.S.C. § 2000e-5(e); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176

28

1   (9th Cir. 2000).  The administrative requirement to timely file with the EEOC serves as both a judicial

2   statute of limitations and a jurisdiction prerequisite.  *Sommatino v. United States*, 255 F.3d 704,

3   707–09 (9th Cir. 2001); *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir. 1990).  Claims based on

4   discriminatory incidents outside the relevant time period are barred.  *Sosa*, 920 F.2d at 1455.

5        The Ninth Circuit has not yet addressed what the statute of limitations is for claims under §

6   504 of the Rehabilitation Act, but other circuits have applied the state personal injury statute of

7   limitations.  *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135–36 (9th Cir.

8   2001).  District Courts within this circuit have adopted this approach, holding the statute of limitations

9   to be two years, based upon the California Code of Civil Procedure's statute of limitations for personal

10  injury claims.  Cal. Code Civ. Proc. § 335.1; *Pimentel v. Orloff*, 2008 WL 4963049, at *2 (N.D. Cal.

11  Nov. 19, 2008).

12       Plaintiff provides her Charge of Discrimination filed with the EEOC, dated by her August 11,

13  2008. (FAC at 77.)  In that charge, she alleges that Defendants discriminated against her in violation

14  of, *inter alia*, Title VII and the ADA.  The Charge of Discrimination states that the discrimination

15  forming the basis for which the charge was filed began on September 1, 2007, and was ongoing as of

16  the filing of the charge.  (*Id.*)  However, in her complaint Plaintiff fails to allege any discriminatory

17  acts that violate Title VII or the ADA that would have accrued within 300 days of August 11, 2008,

18  nor any violations of the Rehabilitation Act that have occurred in the last two years.  The complaint

19  mainly alleges that members of the SDUSD stole from her and harassed her in 2002 and 2003.  (*See,*

20  *e.g.*, *id.* at 55–64.)  Plaintiff states that on June 19, 2003, SDUSD "effectively terminated her

21  employment at Torrey Pines Elementary School."  (*Id.* at 61.)  These events fall well outside of the

22  statute of limitations for her causes of action.  Further, based on these events the two-year statute of

23  limitations for the Rehabilitation Act claim ran in 2005.

24       Plaintiff provides no dates the Court can locate for any events after November, 2003, other

25  than conclusory statements such as "[Defendants f]ailed to accommodate [Plaintiff's] disability. . .

26  from year 2002 to 2008." (FAC at 9.)  Given Plaintiff's statement that she was effectively terminated

27  in June, 2003, such an accusation presumably refers to Plaintiff's continuing to not be employed by

28

1   Defendants.  Continued non-employment is not itself a discreet act of discrimination.  *See Olsen v.*

2   *Idaho State Bd. Of Med.*, 363 F.3d 916, 926 (9th Cir. 2004) ("A claim accrues when a plaintiff knows

3   or has reason to know of the injury which is the basis of the action").

4          Plaintiff also asserts that her due process rights were deprived at an administrative hearing

5   which occurred at a date not specified in the complaint, but some years after the events of 2002–03.

6   (FAC at 8.)  However, the Court understands Plaintiff to be alleging not that she was discriminated

7   against at the hearing, but rather that she was denied proper process at the hearing.  In *Delaware State*

8   *College v. Ricks*, 449 U.S. 250 (1980), the Supreme Court ruled that the statute of limitations accrues

9   for discriminatory acts when the "operative decision" is made regarding a plaintiff's employment.

10  *Ricks*, 449 U.S. at 256–58; *see also RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1059 (9th Cir.

11  2002).  Plaintiff alleges that the "operative decision" regarding her employment, and the notice to her

12  of that decision, occurred in June, 2003.  While Plaintiff can make a separate claim that her right to

13  due process was violated at the hearing, such a claim does not extend the statute of limitations on

14  claims linked to the discriminatory acts alleged from 2002–03.  *See Ricks*, 449 U.S. at 257

15  (discrimination is not considered to continue up to termination itself unless separate acts of

16  discrimination are alleged within the statute of limitations period); *Hoesterey v. City of Cathedral*

17  *City*, 945 F.2d 317, 319–20 (9th Cir. 1991) (when plaintiff challenges not her termination but her

18  termination without due process, the due process cause of action accrues upon the last day of

19  employment).

20         Though Plaintiff's ADA, Title VII, and Rehabilitation Act claims are barred by the statute of

21  limitations, she is entitled to equitable tolling if her administrative hearing, earlier suits, and current

22  complaint satisfy the following factors:

23         1) timely notice to the Defendants in filing the first claim; 2) lack of prejudice to the
           Defendantss in gathering evidence for the second claim; and 3) good faith and
24         reasonable conduct in filing the second claim.

25  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993) (citation omitted).  "The doctrine

26  of equitable tolling focuses on the effect of the prior claim in warning the Defendants in the

27  subsequent claim of the need to prepare a defense."  *Id.*

28

1   Plaintiff has not pled facts which would justify tolling.  Therefore, her claims must be

2   **DISMISSED**.  However, since the Court can not conclusively determine that Plaintiff cannot possibly

3   plead facts justifying tolling, it will grant Plaintiff leave to amend.

4   **IV.     Failure to State a Claim**

5           **A.      Age Discrimination in Employment Act**

6           Plaintiff next alleges discrimination under the Age Discrimination in Employment Act

7   ("ADEA").  (FAC at 9.)  The ADEA prohibits employers from "fail[ing] or refus[ing] to hire or . .

8   . discharg[ing] any individual [who is at least 40 years old] . . . because of such individual's age."

9   29 U.S.C. § 623(a)(1).  To state a claim under the ADEA, a plaintiff must make a prima facie case

10  of discrimination.  This requires Plaintiff to show that she (1) belonged to a protected class; (2) was

11  satisfactorily performing her job or was qualified for hire or promotion; (3) was terminated, rejected

12  for employment, or otherwise subjected to an adverse employment action; and (4) was replaced by

13  a substantially younger employee with equal or inferior qualifications, or by alleging direct evidence

14  of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Pottenger v. Potlatch

15  Corp.*, 329 F.3d 740, 745 (9th Cir. 2003); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir.

16  1994).

17          Although ADEA claims have the same EEOC-notification-based statute of limitation as ADA

18  and Title VII claims, the statute of limitations for this claim may not have yet run.  That is because

19  unlike claims under the ADA or Title VII, the ADEA statute of limitations begins to run as of the

20  plaintiff's actual termination.  Since the date of the administrative hearing that appears to have

21  officially ended Plaintiff's employment is unclear, the Court considers her ADEA claim on the

22  merits.

23          Plaintiff's complaint fails to state an ADEA claim.  First, Plaintiff has not made out a prima

24  facie case of discrimination. The allegations of the FAC contain the first three circumstantial

25  evidence factors: (1) that she belonged to a protected class, (2) that she was satisfactorily performing

26  her job, and (3) that she was terminated.  But Plaintiff has not alleged that she was replaced by

27  someone substantially younger with equal or inferior qualifications.

28

1   Nonetheless, courts have held that lacking the replacement element is not always fatal to a

2   plaintiff's case.  If she alleges that she was terminated due to a general reduction in an entity's

3   workforce, she may allege "circumstantial, statistical, or direct evidence" that gives rise "to an

4   inference of discrimination."  *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990).

5   However, mildly suggestive comments, let alone conclusory allegations of violation of the ADEA,

6   do not create an inference of age discrimination.  *See, e.g.*, *Nidds v. Schindler Elevator Corp.*, 113

7   F.3d 912, 918–19 (9th Cir.1996); *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993); *Merrick*

8   *v. Farmers Ins. Group*, 892 F.2d 1434, 1438–39 (9th Cir.1990).

9   Plaintiff, however, has not alleged that her discharge was due to a general reduction in the

10  workforce, and she has not alleged comments made by her superiors about her age nor any other

11  evidence which the Court can find that would support an inference of discrimination based on age.

12  Plaintiff's ADEA claim is therefore inadequately pled and **DISMISSED**.

13  **B.    Due Process**

14  Plaintiff claims that her Fourteenth Amendment right to due process was violated.  The

15  Fourteenth Amendment states, in relevant part "nor shall any State deprive any person of life, liberty,

16  or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "A threshold requirement

17  to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property

18  interest protected by the Constitution."  *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56,

19  62 (9th Cir. 1994).

20  Plaintiff's due process allegations are flawed for a number of reasons.  She alleges due

21  process violations by the OAH, who is not named as a Defendant, but makes no such claims against

22  the named Defendants.  (*See* FAC at 8, 24.)  Further, the due process claims in the FAC do not satisfy

23  Federal Rule of Civil Procedure 8(a).  Nor has Plaintiff identified with adequate specificity a

24  constitutionally protected liberty or property interest.  *Cf. Conn v. Gabbert*, 526 U.S. 286, 292 (1999)

25  (due process standard for obstacles to a field of employment); *Ulrich v. City and County of San*

26  *Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (due process standard for administrative hearing

27  procedures of a 'local government entity').  Therefore, Plaintiff's due process claims are inadequately

28

1    pled and must be **DISMISSED**.

2         **C.    First Amendment**

3         Plaintiff next alleges that her "freedom of speech was taken away." (FAC at 9.) The Court

4    presumes that Plaintiff is alleging a violation of her First Amendment rights.[3]   A state public

5    employer may not unduly abridge an employee's First Amendment rights.   *Keyishian v. Bd. of*

6    *Regents*, 385 U.S. 589, 605–06 (1967).  Plaintiff's First Amendment allegations, however, are purely

7    conclusory.  She provides no explanation as to how Defendants abridged her free speech right.  *Cf.*

8    *Connick v. Myers*, 461 U.S. 138 (1983) (discussing protection against termination in retaliation for

9    exercising rights under the First Amendment).  Without such an explanation, Plaintiff's complaint

10   does not state a cognizable First Amendment claim and must be **DISMISSED**.

11        **D.    Other Federal Claims**

12        Plaintiff lists several other federal constitutional provisions in her complaint.  For example,

13   Plaintiff makes statements such as "[f]ailure to allow free speech: Articles I, II; and amendments .

14   . . XV, XIX, and XXVI." (FAC at 3.)  These claims are not attached to any statements of how such

15   provisions of the constitution were violated.  Since merely listing out articles and amendments of the

16   constitution fails to put Defendants on notice as to what the actual claims against them are, these

17   claims are **DISMISSED** for failure to satisfy Rule 8(a).  *See Bell Atl.*, 550 U.S. at 555.

18   **V.    Supplemental Jurisdiction over State Law Claims**

19        Having dismissed all of Plaintiff's federal claims, the Court must address her state law claims.

20   "The district court may decline to exercise supplemental jurisdiction over a [state law] claim . . . if

21   . . . the district court has dismissed all claims over which it has original jurisdiction." *Acri v. Varian*

22   *Assoc., Inc.*, 114 F.3d 999, 1000 n.2 (9th Cir. 1997) (citing 28 U.S.C. § 1367(c)).  The Court therefore

23   exercises its discretion and declines supplemental jurisdiction over the state law claims.  They are

24   **DISMISSED** without prejudice.

25   //

26   _____

27        [3] The Court notes that the First Amendment right to freedom of speech is incorporated against
     the states through the due process clause of the Fourteenth Amendment. *See Gitlow v.New York*, 268
28   U.S. 652, 666 (1925); *Alaska v. EEOC*, 564 F.3d 1062, 1069 (9th Cir. 2009).

**VI.     Leave to Amend**

This Court must grant leave to amend unless it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto*, 957 F.2d at 658.  In this case, it is not clear that amendment would be futile.  Therefore, the Court grants Plaintiff leave to amend.

**CONCLUSION**

For the reasons stated, Defendant's motion to dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.  Further, Defendants' objection to Plaintiff's evidence in support of her opposition to the motion to dismiss is **OVERRULED** as moot.  (Doc. No. 58-2.)  If Plaintiff elects to amend her complaint, she **MAY FILE** her Second Amended Complaint <u>within 45 days</u> of the date this order is electronically docketed.

IT IS SO ORDERED.


DATED:  October 13, 2009

_____
Honorable Janis L. Sammartino
United States District Judge