1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   CHERIE ALEXANDER,                          CASE NO. 08-CV-1814 JLS (POR)

12                            Plaintiff,        **ORDER: GRANTING**
                                                **DEFENDANT'S MOTION TO**
13          vs.                                 **DISMISS**

14   SAN DIEGO UNIFIED SCHOOL                   (Doc. Nos. 76, 87, & 85s)
     DISTRICT; JIM SOLO; COLLEEN
15   CONAWAY; and CHRIS MARA,

16                            Defendant.

17

18          Presently before the Court is Defendants' motion to dismiss the complaint.  (Doc. No. 76.)

19   For the reasons set forth below, Defendant's motion is **GRANTED** and this action is **DISMISSED**.

20   Further, Plaintiff's motion for reconsideration of the Order denying Plaintiff's motion to stay and her

21   Motion to consolidate this matter with 08cv1818 are **DENIED AS MOOT**.  (Doc. Nos. 85 & 87.)

22                                   **BACKGROUND**

23          In this Court's Order granting Defendants' prior motion to dismiss, it addressed the

24   background facts of this case in detail.  (Doc. No. 63 at 1–2.)  The Court incorporates by reference that

25   summary here.

26          On October 3, 2008, Plaintiff filed her Complaint, (Doc. No. 1) and amended that Complaint

27   on June 19, 2009.  (Doc. No. 45.)  On July 6, 2009 Defendants filed a motion to dismiss, which this

28   Court granted on October 13, 2009.  (Doc. Nos. 49 & 63 (Prior Order).)  Plaintiff filed her Second

Amended Complaint (SAC) on December 1, 2009.  (Doc. No. 64.)  Defendants filed the present motion to dismiss on March 9, 2010.  (Doc. No. 76.)  Plaintiff responded on March 26, 2010 and Defendants replied on April 5, 2010.  (Doc. Nos. 80 & 83.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief.  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint.  *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense."  *Id.* at 1950 (citation omitted).  "[W]here the

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

In reviewing Defendants' motion and the SAC, the Court must conclude that Plaintiff has failed to state a claim sufficient to defeat Defendants' motion to dismiss.

## I.  CLAIM PRECLUSION

Defendants' first argument, and the one to which they commit the most pages, is that Plaintiff's state law claims are barred by principles of claim preclusion.  (Memo. ISO Motion at 1–8.)  From Defendants' evidence, it appears that Plaintiff has filed six state law claims against various Defendants related to the underlying factual allegations in this lawsuit.  (*See id.* at 2–3.)  Based on this evidence, some of Plaintiff's state law claims are plainly precluded.

However, Defendants have not adequately briefed the issue to allow the Court to rule on this issue.  Preclusion applies <u>only</u> to issues decided on their merits in previous litigation.  *See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971).  "'[A] former judgment is <u>not</u> a collateral estoppel on issues which might have been raised but were not; just as clearly it is a collateral estoppel on issues which were raised, even though some factual matters or legal arguments which could have been presented were not.'"  *Border Bus. Park, Inc. v. City of San Diego*, 49 Cal. Rptr. 3d 259, 281 (Cal. Ct. App. 2006) (quoting *Bleeck v. State Bd. of Optometry*, 18 Cal. Rptr. 860, 869 (Cal. Ct. App. 1971)) (emphasis added).  In light of this well established legal standard, Defendants' cursory argument that all of Plaintiff's claims are precluded is wrong.  (Memo. ISO Motion at 6.)

In order to decide the preclusion issue here, Defendants would have to show the factual and legal claims made in the prior litigation and against which particular Defendants those claims were asserted.  The short case synopses contained in Defendants' motion fails to do any of this.  Defendants also neglect to show that the same factual and legal claims are being raised by Plaintiff against the same Defendants in the SAC.  And the Court will not do Defendants' work for them by which claims are precluded and which are not.

08cv1814

1  **II.      TITLE VII, THE AMERICANS WITH DISABILITIES ACT, AND THE REHABILITATION ACT**

2          As she did in her first complaint, Plaintiff alleges violations of the Americans with Disabilities

3  Act ("ADA"), Title VII of the Civil Rights Act of 1964, and § 504 of the Rehabilitation Act.  (*See*

4  SAC at 15–17.[1])  Title I of the ADA prohibits discrimination by, *inter alia*, an employer.  42 U.S.C.

5  §§ 12111(2), 12111(5), 12112.  There are seven enumerated types of discrimination for purposes of

6  the statute.  42 U.S.C. § 12112.  As potentially relevant to Plaintiff's allegations, discrimination

7  includes (1) limiting an employee in a way that adversely affects her opportunities because of her

8  disability, (2) utilizing standards, criteria, or methods of administration that have the effect of

9  discrimination on the basis of disability, (3) not making reasonable accommodations to known

10  physical or mental limitations, (4) denying employment based on the employer's need to make

11  accommodations to the employee's impairments, and (5) using qualification standards, employment

12  tests or other selection criteria that screen out or tend to screen out an individual with a disability.  *Id.*

13          Title VII makes it unlawful "for an employer– (1) to fail or refuse to hire or to discharge any

14  individual, or otherwise to discriminate against any individual with respect to his compensation, terms,

15  conditions, or privileges of employment, because of such individual's race, color, religion, sex, or

16  national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in

17  any way which would deprive or tend to deprive any individual of employment opportunities or

18  otherwise adversely affect his status as an employee, because of such individual's race, color, religion,

19  sex, or national origin."  42 U.S.C. § 2000e-2.  "A person suffers disparate treatment in his

20  employment when he or she is singled out and treated less favorably than others similarly situated on

21  account of" her race, color, religion, sex, or national origin.  *Cornwell v. Electra Cent. Credit Union*,

22  439 F.3d 1018, 1028 (9th Cir. 2006).

23          "To establish a violation of § 504 of the [Rehabilitation Act], a plaintiff must show that (1) she

24  is handicapped within the meaning of the [Act]; (2) she is otherwise qualified for the benefit or

25  services sought; (3) she was denied the benefit or services solely by reason of her handicap; and (4)

26  _____

27          [1]  Because the SAC's page numbers are not all visible in the copy on the case docket, all
citations to the SAC in this Order refer to document number 64 unless otherwise specified and pincites
refer to the page number assigned by CM/ECF.

28

the program providing the benefit or services receives federal financial assistance." *Id.*

In order to bring claims under the ADA or Title VII, a plaintiff must file a claim with the United States Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged act(s) of discrimination, or within 300 days if she has first filed state charges with the California Department of Fair Employment and Housing (DFEH). 42 U.S.C. § 2000e-5(e); *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) ("the ADA adopts the procedural requirements of Title VII, including the EEOC filing requirement"). The administrative requirement to timely file with the EEOC "serves as a judicial statute of limitations" and substantial compliance with the presentment requirement is a jurisdiction prerequisite. *Sommatino v. United States*, 255 F.3d 704, 707–09 (9th Cir. 2001); *Santa Maria*, 202 F.3d at 1176; *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir. 1990). In other words, if a claim is not timely raised with the EEOC, the Court will not consider it except in the limited circumstance of waiver, estoppel, or equitable tolling. *Sommatino*, 255 F.3d at 708.

The Court looks to California law for the statute of limitations on claims under § 504 of the Rehabilitation Act. *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135–36 (9th Cir. 2001). Specifically, California's two year statute of limitations for personal injury claims controls. *See J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 570 F. Supp. 2d 1212, 1222 (E.D. Cal. 2008); *see also* Cal. Code Civ. Proc. § 335.1.

In the Court's Prior Order, it stated that Plaintiff had not "allege[d] any discriminatory acts that violate Title VII or the ADA that would have accrued within 300 days of August 11, 2008, nor any violations of the Rehabilitation Act that have occurred in the last two years." (Prior Order at 7.) In reviewing the SAC, the Court comes to the same conclusion. Although Plaintiff attempts to cure this deficiency, her claims are effectively the same as they were in the FAC. It appears that Plaintiff alleges that she was discriminated against on the basis of her age, gender, and disability. (SAC at 39.) She claims that Defendants failed to take reasonable steps to prevent harassment and discrimination and failed to accommodate Plaintiff's disability. (*Id.* at 50.) She further alleges that she "was discriminated against for no reason." (*Id.* at 51.) This alleged discrimination appears to have occurred entirely in 2002 and 2003.

After that, Plaintiff claims that she was "put into a 'limbo' administrative [paid] leave situation with a <u>hold</u> until fired." (*Id.* at 62–63 (emphasis in original).)  She also complains about Defendants' "behavior toward her with discovery and slander and treatment of a 'limbo' situation for years without an opportunity to teach or even join her world of education of which she had been involved for years and years." (*Id.* at 64; *see also id.* at 114–15.)  As best the Court can tell, these allegations stem in part from Plaintiff's California state court cases but mostly from her proceedings before the Office of Administrative Hearings (OAH).  And, similar to the FAC, Plaintiff has not provided any dates for these alleged continuing acts of discrimination.

With respect to Title I of the ADA, none of the alleged misconduct occurred after 2003.  The only potentially relevant action was the OAH hearing, but Plaintiff merely presents a meager allegation of discrimination without setting forth any facts that would be indicative of discriminatory intent.  Her pleadings do not show that Defendants failed to make reasonable accommodations to her disability, limited her opportunities because of her disability, used standards that effectively discriminated on the basis of her disability, or discriminated so that they did not need to make accommodations after 2003.  The Court also cannot see how the OAH hearing could have violated Title I of the ADA.  Therefore, it finds that this claim was brought outside the normal statute of limitations.

Title VII presents a similar problem.  As the Supreme Court has held, "[d]etermining the timeliness of [a plaintiff's] EEOC complaint, and [the] ensuing lawsuit, requires [the Court] to identify precisely the 'unlawful employment practice' of which he complains." *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980).  Further, "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.*  Although Plaintiff alleges that her final termination was discriminatory, she has not identified any specific discriminatory employment practice that occurred after the events of 2002–2003.  Similar to the case before the Supreme Court in *Ricks*, it appears that the allegedly discriminatory events leading to Plaintiff's termination occurred well before the OAH hearing.  Her ultimate termination in 2007 would only toll the limitations period if a violation occurred at that time. *Id.* at 257–58.

Similarly, Plaintiff's allegations do not indicate a cognizable Rehabilitation Act § 504 claim within two years of the filing of her complaint.  There is no indication that Plaintiff was denied a benefit or services during the OAH hearing process.  Any actions against her "by reason of her handicap" appear to have occurred well before the two-year limitation period.

However, as noted in the Court's Prior Order, Plaintiff may be entitled to equitable tolling of her claims.  Specifically, Plaintiff must show:

> 1) timely notice to the Defendants in filing the first claim; 2) lack of prejudice to the Defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim.

*Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993) (citation omitted).  "The doctrine of equitable tolling focuses on the effect of the prior claim in warning the Defendants in the subsequent claim of the need to prepare a defense."  *Id.*

Although the SAC offers additional claims which Plaintiff hopes will justify tolling, the Court finds that they do not.  Therefore, these three claims must be **DISMISSED**.

## III.   AGE DISCRIMINATION IN EMPLOYMENT ACT

Another law cited in the SAC is the Age Discrimination in Employment Act ("ADEA").  (*See* SAC at 15.)  The ADEA prohibits employers from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual [who is at least 40 years old] . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  As stated in the Prior Order, "[t]o state a claim under the ADEA, a plaintiff must make a prima facie case of discrimination.  This requires Plaintiff to show that she (1) belonged to a protected class; (2) was satisfactorily performing her job or was qualified for hire or promotion; (3) was terminated, rejected for employment, or otherwise subjected to an adverse employment action; and (4) was replaced by a substantially younger employee with equal or inferior qualifications, or by alleging direct evidence of discrimination."  (Prior Order at 9 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 745 (9th Cir. 2003); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994)).)  ADEA claims have the same EEOC-notification-based statute of limitation as ADA and Title VII claims.  However, unlike claims under

1    the ADA or Title VII, the ADEA statute of limitations begins to run as of the plaintiff's actual

2    termination.

3         In the Prior Order, the Court found that Plaintiff had not stated an ADEA claim because she

4    "ha[d] not made out a prima facie case of discrimination." (Prior Order at 9.)  The problem was that

5    "Plaintiff ha[d] not alleged that she was replaced by someone substantially younger with equal or

6    inferior qualifications."  (*Id.*)  Nor had Plaintiff "alleged that her discharge was due to a general

7    reduction in the workforce, [or] . . . alleged comments made by her superiors about her age nor any

8    other evidence which the Court can find that would support an inference of discrimination based on

9    age."  (*Id.* at 10.)

10        In this case, the SAC adequately states an ADEA claim.  It identifies the four elements of an

11   ADEA claim and provides sufficient factual allegations to support those elements.  (*See* SAC at 145.)

12        Nonetheless, this claim still must be **DISMISSED**.  The Defendants in this action are (1) San

13   Diego Unified School District and (2) Plaintiff's supervisors and fellow employees.  None of these

14   Defendants are amenable to suit under the ADEA.  First, the Ninth Circuit has held the ADEA

15   "limit[s] civil liability to the employer." *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587–88 (9th Cir.

16   1993).  Defendants Conaway, Mara, and Solo were, so far as the Court can tell, either Plaintiff's

17   supervisors or coworkers.  As a result, they are not proper defendants for this claim.

18        Similarly, the Supreme Court has held that Eleventh Amendment immunity bars the assertion

19   of an ADEA claim against a state government.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 67 (2000).

20    Although Plaintiff's lawsuit is not against the state of California per se, the Ninth Circuit has held that

21   a school district is an agency of the State for purposes of Eleventh Amendment immunity.  *Belanger*

22   *v. Madera Unified Sch. Dist.*, 963 F.2d 248, 251 (9th Cir. 1992).  Thus, the Eleventh Amendment

23   protects Defendant SDUSD from this particular claim.  Since none of the Defendants are amenable

24   to this claim, it must be **DISMISSED WITH PREJUDICE**.

25   //

26   //

27   //

28

**IV.    TITLE IX**

The SAC also mentions Title IX in passing.  (SAC at 16.)  "Title IX proscribes gender discrimination in education programs or activities receiving federal financial assistance."  *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 514 (1982).  The statute specifically provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

However, Plaintiff's brief mention of Title IX is insufficient to properly state a claim thereunder.  She does not adequately plead facts showing that she was discriminated against on the basis of her gender.  In other words, the Court understands that Plaintiff believes that she was fired on the basis of her sex, but Plaintiff has not told the Court why she has that belief.  The SAC does not contain facts that lead to any credible conclusion that the termination of Plaintiff's employment was related to her gender.  Therefore, the Title IX claim is **DISMISSED**.

**V.    DUE PROCESS**

The fourth cause of action alleges that Plaintiff's due process rights were violated under the Fourth, Fifth, Sixth, and Fourteenth Amendments.  (SAC at 14.)  The Fifth Amendment provides, in relevant part, that "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. IV.  The Fourteenth Amendment contains a similar provision: "nor shall any State deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV.  "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."  *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994).

Plaintiff's due process allegation is flawed for a number of reasons.  First, and most obviously, the Fourth and Sixth Amendments do not provide a right to due process, but instead protect against unlawful search and seizure and provide various rights to defendants in criminal actions.

Next, Plaintiff's Fifth Amendment due process claim also fails.  "Due process of law is secured against invasion by the federal government by the Fifth Amendment and is safe-guarded against state

1    action in identical words by the Fourteenth." *Betts v. Brady*, 316 U.S. 455, 462 (1942) *overruled on*

2    *other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963).  Since Defendants are not federal

3    government actors, the Fifth Amendment's due process clause is inapplicable to this case.  *Id.*; *see*

4    *also Leslie v. City of Sand City*, 615 F. Supp. 2d 1121, 1126 (N.D. Cal. 2009).

5        Finally, Plaintiff has not stated a claim under the Fourteenth Amendment.  It is clear that her

6    due process allegations stem from the OAH proceedings.  (*See* SAC ¶ 163.)  However, it is still not

7    clear what constitutionally protected liberty or property interest Plaintiff asserts. *Cf. Conn v. Gabbert*,

8    526 U.S. 286, 292 (1999) (due process standard for obstacles to a field of employment); *Ulrich v. City*

9    *and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (due process standard for

10   administrative hearing procedures of a 'local government entity').  Nor is it clear what process she

11   believed was due but did not receive.  The Court therefore concludes that recovery under this claim

12   is implausible based on the allegations in the SAC.  The due process claims are therefore

13   **DISMISSED**.

14   **VI.    FIRST AMENDMENT**

15       The SAC also attempts to make claims under the First Amendment.  (SAC at 9, 34–38, 164.)

16   Plaintiff alleges that she "was written up if she even called or wrote or said anything to a teacher

17   friend."  (*Id.* at 164.)  Further, Plaintiff claims that Defendants "demanded Plaintiff not talk—stay

18   home—cannot go to school functions cannot see school friends—cannot go to her own room with her

19   own property inside—cannot do charts—cannot send anything to school people or school

20   friends—cannot give opinion (sic).  If Plaintiff were to do any of these things the police would be

21   called—huge intimidation and humiliation to Plaintiff."  (*Id.*)

22       A state public employer may not unduly abridge an employee's First Amendment rights.

23   *Keyishian v. Bd. of Regents*, 385 U.S. 589, 605–06 (1967).  In this case, however, it is not clear exactly

24   what Defendants did that Plaintiff believes impinges on her right to free speech.  Some of her

25   allegations, such as keeping her out of the school and away from the school's events, do not appear

26   to implicate her right to free speech.

27       As to her allegation that Defendants "demanded Plaintiff not talk," it is very vague.  (SAC at

28

- 10 -

164.)  It seems from the SAC's allegations that Plaintiff could talk, but was instructed not to speak about certain subjects or with certain people under the threat of legal sanctions.  (*Id.*)  This might, under appropriate circumstances, be sufficient to carry a free speech claim.  *See White v. Lee* 227 F.3d 1214, 1228 (9th Cir. 2000) ("Informal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment." (citation omitted)).  However, the allegations of the SAC lack detail.  Plaintiff does not explain in general or in detail what subjects were involved in the alleged prohibition.  She also does not state where she might have wanted to speak but was forbidden, to whom she was not allowed to speak, or by whom she was directed not to speak.  Plaintiff's pleadings are so general that the Court cannot conclude that her ability to recover on this claim is plausible.  Thus, the First Amendment claim must be **DISMISSED**.

## VII.    OTHER FEDERAL CLAIMS

Plaintiff lists other federal constitutional provisions in her complaint such as Articles I and II of the Constitution along with Amendments II, XV, XIX, and XXVI. (SAC at 14–15.) Plaintiff states that "[t]hese claims go with freedom of speech also."  However, none of these constitutional provisions protect the right to free speech.  Further, to the extent that Plaintiff believes that these provide her other avenues of relief, the thrust of her allegations is unclear to the Court.  Therefore, these claims must be **DISMISSED** for failure to satisfy Rule 8(a).

## VIII.    SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS

Like the FAC, the SAC does not state any viable federal claims.  "The district court may decline to exercise supplemental jurisdiction over a [state law] claim. . . if. . . the district court has dismissed all claims over which it has original jurisdiction." *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000 n.2 (9th Cir. 1997) (citing 28 U.S.C. § 1367(c)).  Plaintiff's state law claims are therefore **DISMISSED WITHOUT PREJUDICE**.

//

//

//

## IX.    LEAVE TO AMEND

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  In other words, the Court may deny leave to amend where amendment would be futile.  *See id.*; *Schreiber Distrib.*, 806 F.2d at 1401. In this case, the evolution of Plaintiff's pleadings in this case make clear that amendment of these claims would be futile and that no leave to amend is warranted.

### CONCLUSION

The Court has spent significant time reviewing Plaintiff's Second Amended Complaint and Defendants' motion.  And although it dismisses this case, it does not take lightly Plaintiff's allegations.  However, as stated above, the claims Plaintiff sets forth in the Second Amended Complaint do not provide her an avenue for relief in this matter.  Therefore, for the reasons stated above, Defendant's motion to dismiss is **GRANTED** and Plaintiff's complaint is **DISMISSED**. Further, Plaintiff's motion for reconsideration of the Order denying Plaintiff's motion to stay and her Motion to consolidate this matter with 08cv1818 are **DENIED AS MOOT**.

IT IS SO ORDERED.


DATED:  June 15, 2010

_____
Honorable Janis L. Sammartino
United States District Judge

- 12 -

08cv1814